# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     *Respondent/Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Case No: 10-CR-0022-JHP |
| ELMER MARAVILLA, ) | |
| ) | |
|     *Petitioner/Defendant*. ) | |

## ORDER AND OPINION

Before the Court is Petitioner Elmer Maravilla's ("Maravilla") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody brought pursuant to 28 U.S.C. § 2255 (Doc. No. 185). For the reasons cited herein, Petitioner's motion is **DENIED.**

## BACKGROUND

On February 2, 2010, a federal grand jury returned a seven-count indictment charging Maravilla and others with drug and firearm charges, arising out of a conspiracy to distribute methamphetamine. (Doc. No. 2). The indictment charged Maravilla with (1) conspiring to possess with intent to distribute and to distribute 50 grams of methamphetamine (Count One); (2) distributing five grams or more of methamphetamine on April 23, 2009 (Count Three); (3) possessing a firearm in furtherance of a drug trafficking crime (Count Four); (4) distributing five grams or more of methamphetamine on May 1, 2009 (Count Six); and (5) distributing five grams or more of methamphetamine on May 14, 2009 (Count Seven). (Doc. No. 2). On February 9, 2010, the Court appointed the Federal Public Defender's office to represent Maravilla. (Doc. No. 9). On February 11, 2010, the Court appointed William Patrick Widell as counsel for Maravilla, and allowed the Federal Public Defender to withdraw. (Doc. Nos. 12, 14, 15). On

February 25, 2010, Arthur Fleak entered his appearance as retained counsel for Maravilla. (Doc. No. 34). Mr. Fleak represented Maravilla at the change of plea and sentencing in district court and on direct appeal. On May 20, 2010, the government filed an information alleging that Maravilla had two prior drug convictions that could be used to enhance his sentence under 21 U.S.C. § 851. (Doc. No. 86). The same day, pursuant to a written plea agreement, Maravilla entered a plea of guilty as to Count One, conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine. (Doc. No. 90). Further, in exchange for his guilty plea to Count One, the government agreed to dismiss the remaining counts against Maravilla. (*Id.* at 7). In his plea agreement, Maravilla acknowledged that the Court had the discretion to impose any sentence up to the statutory maximum, and that he could not withdraw his guilty plea if he received a sentence up to the maximum. (*Id.* at 10).

At Maravilla's change of plea hearing, Magistrate Judge McCarthy conducted a thorough Rule 11 colloquy, first ascertaining that Maravilla was satisfied with Mr. Fleak's performance:

> THE COURT: Mr. Maravilla, have you had enough time to fully confer with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you fully conferred with your attorney about all aspects of your case, sir, concerning any information that might be favorable to you and any defense that you might have to this case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied that your attorney has fully investigated your case?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you satisfied that your lawyer properly advised you?
>
> THE DEFENDANT: Yes, sir.

>THE COURT: Are you completely satisfied with the services of your attorney?
>
>THE DEFENDANT: Yes, sir

(Plea Tr. at 6). After Judge McCarthy confirmed that Maravilla had read the indictment, Mr. Fleak explained that the plea to Count One was in exchange for dismissal of the remaining counts:

>THE COURT: Do you feel like you understand the nature of the charge that you're going to enter a plea of guilty to?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: It's my understanding that it's going to be a plea of guilty to Count One; is that right, counsel?
>
>MR. FLEAK: That's correct, Your Honor. Pursuant to a plea agreement, the government and the defendant agreed that if he pleads to Count One, the other counts will be dismissed at sentencing.

(*Id.* at 9). Judge McCarthy notified Maravilla that in sentencing him, Judge Payne could consider any reliable information presented:

>THE COURT: Do you understand, sir, that in deciding what sentence to impose in this case Judge Payne can consider any reliable information that comes to his attention, including criminal conduct that you're not pleading guilty to; is that clear to you?
>
>THE DEFENDANT: Yes, sir.

(*Id.* at 13). Judge McCarthy specifically warned Maravilla that although the government was dismissing the firearm count, Judge Payne could consider that charge in deciding his sentence:

>MR. FLEAK: No. Your Honor, he just asked me about the gun charge and as I said before and explained to him in the jail that if he lives up to his part of the plea agreement the government will dismiss the gun case, 924(c) charge. That's what he was asking me about.
>
>THE COURT: All right. That's your plea agreement, that if you plead guilty to Count one they are going to dismiss those other counts at sentencing?

> THE DEFENDANT: Right.
>
> THE COURT: I want to make sure you understand, sir, that when Judge Payne decides what sentence to give you he can consider that fact that you were charged with that and he can determine whether or not you committed that offense; do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: So it doesn't completely go away, he still gets to consider it in deciding what sentence to give you?
>
> THE DEFENDANT: In other words, it doesn't matter what I say; right?
>
> THE COURT: It does matter what you say and the reason we're here today is to make sure you understand what's happening. So if you have some question about that I'm happy to take a break and let you talk to Mr. Fleak about it.
>
> THE DEFENDANT: I've got no questions on it.
>
> THE COURT: Okay. But it's clear to you that you are facing up to that maximum that I talked to you about?
>
> THE DEFENDANT: Yes.

(*Id.* at 14-15). Maravilla again confirmed that he had read and understood the plea agreement, had no questions about it, and that it contained every term of his agreement with the government. (*Id.* at 15-16). Before he accepted Maravilla's guilty plea, Judge McCarthy explained that the firearm charge would have carried a mandatory five-year term, consecutive to his drug sentence, and that by pleading guilty, Maravilla was avoiding that sentence:

> THE COURT: That's what this form indicates, sir. If that's what you want to do, sign the form; if you don't want to do it, don't sign the form. The 924 -- I'm concerned about Mr. Maravilla's attitude here. The 924(c) count that's Count four of this indictment, that would have carried a mandatory consecutive sentence; would it not?
>
> MR. FLEAK: Mandatory consecutive sentence of five years, Your Honor, on top of the drug charge.

4

> THE COURT: All right. So Mr. Maravilla, when you said earlier that it doesn't make any difference what you say or do, you understand that at a minimum you're getting out of that?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: There won't be a consecutive sentence imposed for that; do you understand that?
>
> THE DEFENDANT: I understand that.
>
> THE COURT: All right. And it's still your desire to waive your right to a jury trial; is that right, sir?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 17-18). Following this exchange, Maravilla entered a guilty plea. (*Id.* at 18).

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), which set Maravilla's base offense level at 30 based on 36.34 grams of methamphetamine. (PSR at ¶ 21). Maravilla received a two-level increase under USSG § 2D1.1(b)(1) because he possessed a dangerous weapon, and a second two-level increase because he was an organizer in the criminal activity. (*Id.* at ¶¶ 22, 24). A three-level reduction for acceptance of responsibility resulted in a total offense level of 31. (*Id.* at ¶ 27, 30). Maravilla's criminal history placed him in category III, which led to a sentencing guideline range of 135 to 168 months. (*Id.* at ¶ 35). Maravilla also faced a statutory minimum sentence of ten years, or 120 months. (*Id.* at ¶ 34).

Maravilla objected to both enhancements. (Addendum to PSR). In rejecting the dangerous weapon objection, the Probation Officer noted that an undercover agent observed a black pistol in Maravilla's waistband during a drug transaction on April 23, 2009. (*Id.* at 3). The Probation Officer also declined to remove the organizer enhancement, observing that co-defendants confirmed Maravilla's role in the conspiracy. (*Id.* at 2). Multiple witnesses testified before the Court sentenced Maravilla. Chris McGinnis described how Maravilla and his brother,

Timothy, beat him with a mace because he owed $1200 for fronted methamphetamine, and how in jail, Maravilla forced him to sign a statement under duress claiming the beating never occurred. (12/15/10 Sent. Tr. at 14, 25). Melodie Larson described dealing drugs for Maravilla, and that Maravilla showed her pictures depicting the beating he and his associates gave Chris McGinnis. (*Id.* at 49-50). Further, Carla Sisemore testified that she saw Maravilla with firearms on two occasions. (*Id.* at 88-89). ATF Special Agent Darrell Withem also testified that an undercover agent got into Maravilla's car for a drug deal and saw a semiautomatic pistol under the front seat. (*Id.* at 158). After the parties filed sentencing memoranda, the Court sentenced Maravilla to 145 months imprisonment. (Doc. No. 163).

Maravilla appealed his conviction and sentence; Mr. Fleak continued to represent Maravilla on appeal. On appeal, Mr. Fleak filed an *Anders* brief "stating that he recognized "no valid objection to the plea waiver" or "no non-frivolous issues" and could find "no valid reason to challenge the plea agreement**,**" but identifying several potential sentencing issues. *See United States v. Maravilla*, 458 F. App'x 764, 765 (10th Cir. 2012) (emphasis omitted). Maravilla filed objections to the *Anders* brief, specifically arguing that the plea agreement was breached because despite the agreement to dismiss the gun count, his offense level was enhanced for the same conduct. *Id.* at 766.

The Tenth Circuit rejected the sentencing arguments, affirming this Court's findings that (1) Maravilla was a leader or organizer; (2) he was properly held responsible for the transactions by his co-conspirators; (3) the drug quantity was over 35 grams; (4) he possessed a gun in relation to drug transactions; (5) his criminal history properly accounted for his prior drug convictions, and (6) evidence supported the finding that he was still an active member of the MS-13 gang. *Id.* at 766-67. With respect to the firearm, the Tenth Circuit noted that "the plea

agreement did not preclude a firearms enhancement, even though the § 924(c) charge was dismissed," and referenced the sentencing testimony about Maravilla's firearm possession. *Id.* at 766.

On August 3, 2012, Maravilla filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his conviction. (Doc. No. 185). Maravilla raises two related claims in his motion. First, he asserts that he received ineffective assistance of counsel because his attorney advised him all other charges would be dropped under the plea agreement, but he nonetheless had his sentence enhanced for possessing a firearm. Second, he claims that his guilty plea was unlawfully induced because he was promised that that there would be no charge for possessing the gun but he received an enhancement to his offense level for gun possession. (Doc. No. 185 at 4-6). The Court ordered the government to respond to Maravilla's § 2255 motion. (Doc. No. 186). The government filed its Response in Opposition to Maravilla's § 2255 motion on September 4, 2012 (Doc. No. 188), and Maravilla filed his Reply thereto on November 26, 2012 (Doc. No. 191). Maravilla's § 2255 motion is fully briefed and before the Court.

## DISCUSSION

Section 2255 is not a substitute for an appeal and is not available to test the legality of matters which should have been challenged on appeal. *U.S.A. v. Mohammad Rizwan Ali Khan,* 835 F.2d 749, 753 (10th Cir. 1987), *cert. denied,* 487 U.S. 1222 (1988). As a result, "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004) (quoting *United States v. Barajas-Diaz,* 313 F.3d 1242, 1245 (10th Cir. 2002). Failure to raise an issue on direct appeal bars the movant/defendant from raising such an issue in a § 2255 Motion to Vacate Sentence unless he can show "both good cause for failing to raise the issue earlier, and that the court's failure to

7

consider the claim would result in actual prejudice to his defense,...." *Id.* Since a writ of habeas corpus is an equitable remedy, a court may consider the merits of the procedurally barred claim, if the defendant alternatively demonstrates "that 'failure to consider the federal claims will result in a fundamental miscarriage of justice.'" *Id.*

In *United States v. Galloway,* 56 F.3d 1239, 1242 (10th Cir. 1995), the Tenth Circuit held claims of constitutionally ineffective counsel should be brought on collateral review. Consequently, no procedural bar will apply to ineffective assistance claims which could have been brought on direct appeal but are raised in post-conviction proceedings. A habeas petitioner may raise substantive claims which were not presented on direct appeal, however, if he can establish cause for his procedural default by showing he received ineffective assistance of counsel on appeal.

A court considering a claim of ineffective assistance of appellate counsel for failure to raise an issue is required to look to the merits of the omitted issue. Where the omitted issues are meritless, counsel's failure to raise it on appeal does not constitute constitutionally ineffective assistance of counsel. *Hooks v. Ward,* 184 F.2d 1206, 1221 (10th Cir. 1999). *See also, Smith v. Robbins,* 528 U.S. 259, 288 (2000). Furthermore, issues previously raised and disposed of on direct appeal generally will not be considered in a § 2255 motion absent an intervening change of law in the circuit. *United States v. Prichard,* 875 F.2d 789 (10th Cir. 1989) (citing *United States v. Nolan,* 571 F.2d 528 (10th Cir. 1978)).

**A. Ground One: Ineffective Assistance of Counsel**

In his § 2255 motion, Maravilla argues that Mr. Fleak rendered ineffective assistance of counsel because he allegedly failed to communicate the possible consequences of the plea agreement to Maravilla prior to his plea of guilty. (Doc. No. 185 at 5). In evaluating Maravilla's

claim of ineffective assistance of counsel, this Court is guided by the familiar holding of *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), which sets out the two elements necessary to demonstrate that an attorney's performance constituted an ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or [] sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

Evaluation of an ineffective assistance claim is a fact-intensive inquiry, requiring a court to determine "whether counsel's assistance was reasonable considering *all the circumstances*." *Id.* at 688 (emphasis added). As the Supreme Court explained in *Strickland*, "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. As such, great deference is granted to defense counsel's reasoned choice of action:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance: that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations omitted). *See also Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999)("[T]hose accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been best.").

Maravilla also bears the heavy burden of proving that the claimed errors actually had an adverse effect on his defense. Given "the presumption that a criminal judgment is final is at its strongest in collateral attacks on the judgment," Maravilla must show more than "that the errors had some conceivable effect on the outcome of the proceedings [as] [v]irtually every act or omission would meet that test." *Strickland*, 466 U.S. at 693, 697. Rather, Maravilla is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Maravilla argues that Mr. Fleak rendered deficient performance in advising him about the possible consequences of the plea agreement. (Doc. No. 185 at 5). However, even if Mr. Fleak's performance was deficient, the Court finds that Maravilla cannot satisfy the heavy burden of establishing that he was prejudiced by the alleged errors. At Maravilla's change of plea hearing, which took place after the alleged errors by Mr. Fleak, the Court informed Maravilla of the consequences of the plea agreement, and Maravilla contemporaneously acknowledged that he understood the consequences. Thus, even if Mr. Fleak failed to inform Maravilla of the consequences of the plea agreement, this error was cured by the Court's colloquy with Maravilla at his change of plea hearing. Accordingly, the Court finds that Maravilla's first ground for relief does not entitle him to relief pursuant to 28 U.S.C. § 2255.

**B. Ground Two: Plea of Guilty Unlawfully Induced**

Maravilla also argues he is entitled to relief because his guilty plea was unlawfully induced. Specifically, Marivilla contends he did not enter a valid guilty plea because he was promised that that there would be no charge for possessing the gun, but he received an enhancement to his offense level for gun possession. (Doc. No. 185 at 4-6). Maravilla's claim for relief fails for two reasons: (1) Maravilla is procedurally barred from raising this issue in his § 2255 motion because it was not raised on direct appeal; and (2) even if Maravilla were not procedurally barred from raising this issue, the record clearly establishes that he entered a valid guilty plea.

### 1. Procedural Bar

As outlined above, relief under § 2255 "is not available to test the legality of matters which should have been raised on appeal." *United States v. Walling*, 982 F.2d 447, 448 (10th Cir. 1992) (quoting *United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987)). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377 (10th Cir. 1994). Maravilla did not raise this claim on direct appeal and cannot show cause for his procedural default; therefore, he is procedurally barred from raising this issue as a ground for relief in his § 2255 motion.

### 2. Validity of Maravilla's Plea of Guilty

Even if Maravilla were not procedurally barred from contesting the validity of his guilty plea, the record clearly establishes that he entered a valid guilty plea. A valid guilty plea must be knowingly, intelligently, and voluntarily made. *See United States v. Gigot,* 147 F.3d 1193, 1197

(10th Cir.1998); *see also* Fed.R.Crim.P. 11. "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. Gigot,* 147 F.3d 1193, 1198 (10th Cir.1998) (quoting *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)) (internal quotation marks omitted). If the defendant does not have any real understanding of the nature of the crime charged, then the plea cannot be a "'deliberate' choice between 'available alternatives.'" *Id.* at 1199; *see also Hicks v. Franklin,* 546 F.3d 1279, 1284 (10th Cir.2008) ("The defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements.").

"Rule 11 of the Federal Rules of Criminal Procedure 'is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.'" *Gigot,* 147 F.3d at 1197 (quoting *McCarthy,* 394 U.S. at 465, 89 S.Ct. 1166). Before a district court may accept a guilty plea, it must "determine that the defendant understands ... the nature of each charge to which the defendant is pleading." Fed.R.Crim.P. 11(b)(1).

The Court finds that Maravilla's argument that his guilty plea was not validly entered meritless. To be sure, the transcript of the plea colloquy reflects that the Court carefully followed the Rule 11 procedures. Although Maravilla now claims he did not understand the nature of the charge and the consequence of his plea, the transcript of his change of plea colloquy amply demonstrates that, at the time of that plea, the Court carefully and repeatedly explained, and that Maravilla indicated he understood, the nature of the charges, the potential punishment he faced, and the consequences of his guilty plea. Further, the effect of the plea agreement on

12

Maravilla's plea was also discussed. Accordingly, Maravilla is not entitled to relief on his second ground for relief.

## CONCLUSION

For the reasons cited herein, Petitioner Elmer Maravilla's ("Maravilla") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody brought pursuant to 28 U.S.C. § 2255 (Doc. No. 185) is **DENIED.**

The Clerk is directed to send a copy of this Order to the 10th Circuit Court of Appeals.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma